**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| RONALD S. HART and | ) | Case No. 08-12107 (CSS) |
| DEBRA S. HART, | ) | Reference Docket No. 24 |
| | ) | |
| Debtors. | ) | |
| | ) | |

<u>**OPINION**</u>[1]

| | |
|---|---|
| Alfred Thomas Giuliano | Gerry Gray |
| Giuliano Miller & Co., LLC | 32531 Samuel Hill Road |
| Berlin Business Park | Laurel, DE 19956 |
| 140 Bradford Drive | |
| West Berlin, NJ 08091 | Counsel For Debtors |

Chapter 7 Trustee

Joseph Grey
Stevens & Lee, P.C.
1105 North Market Street, Seventh Floor
Wilmington, DE 19801

Counsel For Mid-Atlantic Farm Credit, ACA

Dated: March 10, 2009

Sontchi, J. _____

Before the Court is a reaffirmation agreement between the debtors and

their mortgage lender. The lender has a security interest in the debtors' nine-acre

poultry farm, as well as the related farm equipment and the proceeds of the

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal
Rule of Bankruptcy Procedure 7052.

poultry business.    Under Part D of the reaffirmation agreement, which is corroborated by the debtors' schedules I and J, the agreement is presumed to be an undue hardship because the debtors' monthly income less monthly expenses does not leave enough to make the payments under the loans.

The Court makes two findings.  First, under the Third Circuit's opinion in *Price*[2] and section 521 of the Bankruptcy Code, the debtors' loans may "pass through" the bankruptcy case unaffected if the debtors declare their intention to retain the collateral and continue to make regular payments, which the debtors have done.[3]  Second, the Court disapproves the reaffirmation agreement under section 524(m) of the Bankruptcy Code because the presumption of undue hardship has not been rebutted.

## Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1334.  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409(a).  This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), (G) and (O).

## Procedural and Factual Background

Ronald and Debra Hart (the "Debtors") filed their Chapter 7 petition on September 11, 2008.  Subsequently, a Reaffirmation Agreement dated November 26, 2008, by and between the Debtors and MidAtlantic Farm Credit, ACA

---

[2] *Price v. Delaware State Police Fed. Credit Union (In re Price)*, 370 F.3d 362  (3d Cir. 2004).

[3] Because the loans are also secured by personal property the Debtors are required to enter into a reaffirmation agreement in order for the loans to pass through the bankruptcy unaffected.  *In re Baker*, 390 B.R. 524, 529-30  (Bankr. D. Del. 2008), *aff'd*, 2009 WL 222001 (D. Del. 2009).

("MidAtlantic") was filed with the Court.    Through the Reaffirmation Agreement, the Debtors seek to reaffirm their debt under three separate loans from MidAtlantic:

(i)     A promissory note, as amended, in the original principal amount of $889,000, bearing an interest rate of 7.2% (the "First Loan");

(ii)    A promissory note, as amended, in the original principal amount of $55,000, bearing an interest rate of 6.9% (the "Second Loan"); and

(iii)   A revolving line of credit in an amount of up to $26,000, bearing a variable interest rate, which was 4.75% as of October 31, 2008 (the "Revolving Loan", collectively with the First Loan and the Second Loan, the "Loans").

As of November 30, 2008, the total outstanding balance on the Loans was $921,100.36.    The total monthly payment due on the Loans under the Reaffirmation Agreement is $13,853.58.    The Loans are secured by liens on the Debtors' nine-acre poultry farm, as well as the related farm equipment and the proceeds of the poultry business.

In Part D of the Reaffirmation Agreement, the Debtors state that their monthly income is $16,985 and their monthly expenses, including the monthly payment on the Loans, are $19,987.    Thus, the Debtors have a monthly negative balance of $3001.    These amounts are identical to those set forth in the Debtors' Schedules I and J.    The Debtors further state in Part D that they can service the

reaffirmed debt because they are "[t]aking in renters (2); [and] chicken farm business is improving."

The Debtors were represented by counsel in connection with the Reaffirmation Agreement.  In Part C of the Reaffirmation Agreement, counsel certified that (a) the Reaffirmation Agreement represents a fully informed and voluntary agreement by the Debtors; (b) the Reaffirmation Agreement does not impose an undue hardship on the Debtors, notwithstanding the monthly deficit; and (c) counsel fully advised the Debtors of the legal effect and consequences of entering into the Reaffirmation Agreement under section 524(c) and any default under the agreement.

On December 17, 2008, the Court convened a hearing to consider the Reaffirmation Agreement at which counsel for the Debtors and MidAtlantic were present.  At that hearing, the Court inquired whether there had been any change in the Debtors' monthly income or expenses.  Debtors' counsel indicated there had been no such change, although he represented that the Debtors were current on their monthly payments and intended to remain so.  No additional evidence was submitted.

**Legal Discussion**

**A. The "Pass Through" Option For Loans Secured By Real Property After BAPCPA**

In *Price*, the Third Circuit held that the enumeration of three options for treatment of secured property under former section 521(2) – i.e., surrender,

redemption or reaffirmation – did not preclude the debtor from exercising a so-called "fourth option" – i.e., retaining the property while remaining current on payments.[4]  In so holding, the Third Circuit emphasized the following language of section 521: "the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property."[5]

As the language of section 521(a)(2)(A) upon which the Third Circuit relied in *Price* had not been changed by any of the amendments contained in BAPCPA,[6] this Court held in *Baker* that the "pass through" option remains available.[7]  Nonetheless, a chapter 7 debtor wishing to retain personal property secured by a lien must comply with the new procedural requirements of BAPCPA, i.e., sections 521(a)(6) and 363(h).[8]

Broadly speaking, to comply with section 521(a)(6),[9] the debtor must enter into a reaffirmation agreement in order to "retain possession" and for the

---

[4] *Price*, 370 F.3d at 372.

[5] 11 U.S.C. § 521(a)(2)(A).

[6] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA").

[7] *Baker*, 390 B.R. at 528 (citing *In re Anderson*, 348 B.R. 652, 656 (Bankr. D. Del. 2006)).

[8] *Id*. at 528-30.

[9] 11 U.S.C. § 521(a)(6).

automatic stay to remain in effect.[10]  Similarly, under section 362(h)(1),[11] in order for the automatic stay to remain in effect, the debtor again must enter into a reaffirmation agreement.[12]  Nonetheless, the Court may decide not to approve the reaffirmation agreement.

The issue in *Baker* was whether the Court's disapproval of the reaffirmation agreement would affect the debtor's compliance with the requirements of sections 521(a)(6) and 362(h)(1) and, thus, the debtor's ability to retain possession of the personal property securing the debt.  Put another way, would the Court's disapproval of the reaffirmation agreement eliminate the Debtor's right to exercise the "fourth option" under *Price*?[13]  The Court held that it did not.  Thus, regardless of whether the Court approves the reaffirmation agreement, a debtor may retain personal property securing a loan, provided the debtor timely enters into a reaffirmation agreement.[14]  In this case, the Debtors have fully complied with the requirements to retain the personal property secured by the Loans.[15]

In contrast, under *Price*, a debtor may retain real property securing a debt *without* entering into a reaffirmation agreement.  This is because sections

---

[10] *Baker*, 390 B.R. at 528.

[11] 11 U.S.C. § 362(h)(1).

[12] *Baker*, 390 B.R. at 529-30.

[13] *Id*.

[14] For a fuller discussion of the application of the "pass through" option the Court refers the reader to the full opinion in *Baker*.

[15] Including general intangibles and payment intangibles such as the proceeds of the poultry business.

521(a)(6) and 362(h) only apply to personal property, and, thus, do not apply to a debt secured by real property.[16]

Section 521 provides, in pertinent part, that:

(a) The debtor shall . . .

(6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of *personal property* as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such *personal property* unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—

(A) enters into [a reaffirmation] agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or

(B) redeems such property from the security interest pursuant to section 722.

If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law . . . .[17]

---

[16] *See In re Caraballo*, 386 B.R. 398, 402 (Bankr. D. Conn. 2008) (concluding "debtors are permitted to take advantage of the ride through option with respect to relevant real property"); *In re Wilson*, 372 B.R. 816, 820 (Bankr. D.S.C. 2007) ("[T]he Court finds that . . . controlling precedent in the Fourth Circuit . . . provides for a 'ride through' option for real property that was unaffected by the BAPCPA amendments."); *In re Bennett*, 2006 WL 1540842, at *1 (Bankr. M.D.N.C. 2006) ("[T]he court finds that debtors . . . continue to have the right . . . to retain real property without being required to reaffirm or redeem, so long as payments to the creditor are current."). *See also*, *In re Waller*, 394 B.R. 111, 113 (Bankr. D.S.C. 2008) (noting "[t]his Court recently confirmed the viability of the 'ride through' option for debts secured by real property").

[17] 11 U.S.C. § 521(a)(6) (emphasis added).

Thus, under the plain meaning of the statute, section 521(a)(6) does not apply to real property, as the section is specifically limited to personal property.

As discussed above, the language of section 521(a)(2)(A) upon which the Third Circuit relied in *Price* was not changed by BAPCPA. Section 521(a)(2) was amended, however, to provide that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h)*."[18] Section 362(h), in turn, provides:

> In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to *personal property* of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such *personal property* shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) -
>
> > (A) to file timely any statement of intention required under section 521(a)(2) with respect to such *personal property* or to indicate in such statement that the debtor will either surrender such *personal property* or retain it and, if retaining such *personal property*, either redeem such *personal property* pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such *personal property*, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
> >
> > (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action,

---

[18] 11 U.S.C. § 521(a)(2)(c) (emphasis added).

> unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.[19]

Thus, like section 521(a)(6), section 362(h) is specifically limited to personal property.  Furthermore, since section 521(a)(2)(C) provides that section 521(a)(2) may not restrict rights "except as provided in section 362(h)," and section 362(h) only applies to personal property, the "[D]ebtor's rights as to real property appear to be unaffected by the BAPCPA amendments."[20]   As a result, the Debtors in this case were not required to enter into a reaffirmation agreement to retain possession of the real property securing the Loans.

## B.  Enforceability of Reaffirmation Agreement Relating to Real Property

Of course, the Debtors did enter into the Reaffirmation Agreement.  The next question is which procedures and standards govern the enforceability of the Reaffirmation Agreement in connection with the real property securing the Loans.

Section 524 sets forth a Byzantine series of provisions governing the enforceability of reaffirmation agreements.  First, subsection (c) provides that a reaffirmation agreement is enforceable, subject to the following requirements:

- such agreement was made prior to discharge;[21]

---

[19] 11 U.S.C. § 362(h)(1) (emphasis added).

[20] *Wilson*, 372 B.R. at 819-20.

[21] 11 U.S.C. § 524(c)(1).

- the debtor received the § 524(k) disclosures prior to, or contemporaneously with, the execution of the agreement;[22]

- the agreement is filed with the court;[23]

- the debtor has not rescinded the agreement by the later of: the date of discharge or 60 days after the agreement was filed;[24]

- the provisions of subsection (d) have been complied with;[25]

In addition, subsection (c) requires that the reaffirmation agreement:

>  (3)  .  .  .    if applicable, [be] accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--

>> (A) such agreement represents a fully informed and voluntary agreement by the debtor;

>> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

>> (C) the attorney fully advised the debtor of the legal effect and consequences of--

>>> (i) an agreement of the kind specified in this subsection; and

>>> (ii) any default under such an agreement.[26]

>                                * * * *

>  (6)    (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--

---

[22] 11 U.S.C. § 524(c)(2).

[23] 11 U.S.C. § 524(c)(3).

[24] 11 U.S.C. § 524(c)(4).

[25] 11 U.S.C. § 524(c)(5).

[26] 11 U.S.C. § 524(c)(3).

> (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
>
> (ii) in the best interest of the debtor.
>
> (B) *Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.*[27]

If (as in this case) an attorney represents an individual during negotiations then the attorney must file an affidavit containing the averments set forth in section 524(c)(3) in order for the agreement to be enforceable.  If the individual is not represented by counsel during negotiations, however, the Court must approve the agreement as not imposing an undue hardship and being in the debtor's best interest in order for the agreement to be enforceable.  *However, these requirements do not apply if the debt is a consumer debt secured by real property.*[28]  Thus, it appears from the face of section 524(c) that a reaffirmation agreement for a consumer debt secured by real property need not be approved by the Court to be enforceable, regardless of whether the debtor was represented by counsel during its negotiation.

Nonetheless, section 524(c) requires compliance with section 524(d).[29]  Subsection (d) provides that:

---

[27] 11 U.S.C. § 524(c)(6). (emphasis added).

[28] "The term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).  The Loans are consumer debts.

[29] 11 U.S.C. § 524(c)(5).

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. At any such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall--

> (1) inform the debtor--

>> (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

>> (B) of the legal effect and consequences of--

>>> (i) an agreement of the kind specified in subsection (c) of this section; and

>>> (ii) a default under such an agreement; and

> (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, *if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.*[30]

In essence, subsection (d) says that the Court may hold a discharge hearing, but

if a debtor seeks to enter into a reaffirmation agreement and the debtor was not

---

[30] 11 U.S.C. § 524(d). (emphasis added)

represented by counsel during the negotiation of that agreement, the Court shall hold a discharge hearing.  If the debtor was not represented by counsel during negotiation of a reaffirmation agreement, the Court shall "inform" the debtor at the required hearing about the legal consequences of reaffirmation agreements. Additionally, under subsection (d)(2), the Court must make a determination of whether the agreement complies with the requirements of section 524(c)(6), i.e., whether the agreement imposes an undue hardship and is in the best interest of the debtor.  Importantly, however, section 524(d)(2) applies *only if the agreement is for a consumer debt not secured by real property of the debtor.*

Thus, it appears from the face of section 524(d) that a reaffirmation agreement for a consumer debt secured by real property need not be approved by the Court to be enforceable, regardless of whether the debtor was represented by counsel during its negotiation.  Rather, the only applicable requirement is that if the debtor was not represented by counsel then the Court must hold a hearing for the purpose of providing the disclosures set forth in section 524(d)(1).[31]  In this case, the Debtors were represented by counsel and, thus, section 524(d) did not require the Court to convene a hearing for the limited purpose of providing the disclosures.

Finally, section 524(m) expressly governs the "presumption of undue hardship."

---

[31] Otherwise, the attorney provides the disclosures and certifies to having done so. 11 U.S.C.§524(c)(3).

(m)(1) Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt. This presumption shall be reviewed by the court. The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement. No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge.

(2) This subsection does not apply to reaffirmation agreements where the creditor is a credit union, as defined in section 19(b)(1)(A)(iv) of the Federal Reserve Act.[32]

Under section 524(m), a rebuttable presumption of undue hardship arises if the difference between the debtor's income and expenses is less than the payment on the reaffirmed debt. If the presumption is not rebutted to the satisfaction of the Court, the Court may "disapprove" the agreement. Unlike the provisions discussed above, *section 524(m) applies to consumer debts secured by real property*. Section 524(m) does not contain, however, a provision allowing or requiring the Court to review a reaffirmation agreement for a debt secured by real property on

---

[32] 11 U.S.C. § 524(m).

the basis of whether it is in the debtor's best interest.[33] Thus, under section 524(m), the Court's sole function and power in connection with an agreement reaffirming a consumer debt secured by real property is, when the presumption of undue hardship arises, to determine whether it has been rebutted to the satisfaction of the Court.

In other words, if a debtor enters into an agreement reaffirming a debt secured by real property and the presumption of undue hardship arises, the Court must review the agreement.  If the presumption is not rebutted to the satisfaction of the Court, it may "disapprove" the agreement.  In such an instance, the reaffirmation agreement would not be enforceable against the debtor.[34]

In this case, the presumption of undue hardship arises.  The Debtors have a monthly negative balance of $3001.  The Debtors' statement that they can service the reaffirmed debt because they are "[t]aking in renters (2); [and] chicken farm business is improving" is not sufficient to rebut the presumption. In making a determination as to whether the presumption of undue hardship has

---

[33] Several cases have declined to approve a reaffirmation agreement for a debt secured by real property, finding that since a debtor is entitled to retain the real property while remaining current on the payments, it is not in the best interest of the debtor to enter into a reaffirmation agreement.  *See Waller*, 394 B.R. at 114 (refusing to approve reaffirmation agreements as not in the debtors' best interest since the debtors could retain the property without reaffirming the debt); *Caraballo*, 386 B.R. at 402 (same); *Bennett*, 2006 WL 1540842, at *1 (same).  Based upon this Court's analysis, however, the best interest test is not applicable to agreement reaffirming consumer debts secured by real property.

[34] *See In re Husain*, 364 B.R. 211, 215 (Bankr. E.D. Va. 2007) (noting section 524(m) conditions the debtor's ability to enter into a binding reaffirmation agreement on court approval if the presumption of undue hardship arises).

been rebutted to the Court's "satisfaction," the Court is heavily influenced by the same concerns expressed by those courts that have found such agreements not to be in a debtor's best interest.[35]  Indeed, absent some substantial benefit to the debtor such as a reduced interest rate or an adjustment to the term of the loan, the Court finds it difficult to foresee a circumstance where the presumption of undue hardship has arisen and the Court would be satisfied that it has been rebutted.  In any event, the Court is not satisfied that the presumption of undue hardship has been rebutted in this case and the Court will disapprove the Reaffirmation Agreement.

An order will be issued.

---

[35]*See* cases cited *supra*, n. 33.